IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

TAWAYNE DEVONE LOVE,

     Movant,

v.                           Case No. 2:03-cr-00187-1
                                 Case No. 2:08-cv-00192

UNITED STATES OF AMERICA,

     Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

Movant, Tawayne Devone Love ("Defendant") filed a lengthy document entitled "Petition for Relief from a Conviction and/or Sentence Pursuant to 28 U.S.C. § 2255" ("Petition," docket # 564), on March 24, 2008. He submitted an affidavit (# 566) in support of his Petition. In an Order entered April 9, 2008 (# 575), the court directed Movant to complete the standard form § 2255 motion. The completed form ("Motion," # 592) was filed May 19, 2008. The United States has filed its Response (# 626), and Defendant has filed his response in opposition ("Reply," # 641). This matter is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant was originally indicted on five charges on August 12, 2003 (# 11). His court-appointed counsel was Donald L.

Stennett and the assigned judge was the Hon. Charles H. Haden II.
A superseding indictment was returned on November 13, 2003
(unsealed November 20, 2003), increasing the charges to thirteen
and adding five co-defendants (# 28). On November 18, 2003,
Defendant filed a motion for new counsel (# 25), but on November
24, 2003, he withdrew the motion (# 50).

On February 18, 2004, Defendant filed another motion for Mr.
Stennett to withdraw and to appoint new counsel (# 114); the motion
was granted and Herbert L. Hively II was appointed (## 115, 122).
On March 20, 2004, Judge Haden died and the case was re-assigned to
the Hon. David A. Faber (# 148). On May 4, 2004, the case was re-
assigned to the Hon. Joseph R. Goodwin (# 179).

On June 21, 2004, Defendant entered guilty pleas to possession
with intent to distribute more than 50 grams of cocaine base and
possession of a firearm in furtherance of a drug trafficking crime,
in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. §
924(c)(1)(A)(i) (Counts Five and Six of a superseding indictment).
(## 202, 205, 207, 210.) His guilty pleas were entered pursuant to
a plea agreement with the United States, which Defendant signed
with the advice of counsel (# 207). Defendant informed Judge
Goodwin that he was not satisfied with Mr. Hively's representation.
(Tr. Plea Hrng, # 282, at 4-5, 7.) The plea hearing was twice
interrupted by recesses to give Defendant an opportunity to discuss
with Mr. Hively whether his guilty pleas would be entered. Id. at

2

15, 22.  During the course of the hearing, Defendant stated, "I'm guilty as charged to the charges that I'm pleading guilty to.  But I'm not pleading because I'm guilty.  I'm pleading because I don't feel I have any choice."  Id. at 16.  After the second recess, Defendant asked Judge Goodwin to "[p]roceed with the plea."  Id. at 22.  Near the conclusion of the lengthy plea colloquy, Defendant stated that no one forced, threatened, coerced, intimidated or talked him into entering the guilty pleas against his own free will.  Id. at 41.

During Defendant's guilty plea hearing, he testified that, with respect to Count Five, on July 15, 2003, he possessed more than 50 grams of cocaine base at his residence in Charleston, West Virginia.  (Tr. Plea Hrng., # 282, at 27.)  Assistant U.S. Attorney Spencer proffered that on July 15, 2003, a search warrant was executed at Defendant's residence and 87.4 grams of cocaine base was seized from his bedroom.  Id. at 28.  Regarding Count Six, Defendant testified that he "possessed the firearm with drugs;" that is, a loaded firearm was under his pillow in his bedroom, about seven feet from the drugs.  Id. at 31-32.  He stated that he had the firearm to protect himself and the drugs.  Id. at 32.  AUSA Spencer proffered that during the execution of the search warrant on July 15, 2003, the agents found a fully loaded Highpoint 9mm, Model C handgun under the pillow within seven feet of the drugs which were charged in Count Five.  Id. at 33.  After each proffer,

Defendant confirmed that the AUSA's statements were true.  Id. at 28, 33.

> The PSR described Defendant's criminal conduct as follows:
>
> 6.  The offenses to which the defendant, Tawayne Love, has pleaded guilty, although neither was charged as a conspiracy, represents a conspiracy involving various individuals to secure large quantities of powder cocaine and crack cocaine for distribution in the Southern District of West Virginia. * * *
>
> 7.  Tawayne Love was released from the state sentence of imprisonment [for second degree murder] in the summer of 2002 and returned to his mother's residence in Charleston.  Shortly thereafter, he began selling crack cocaine and powder cocaine . . ..

PSR, ¶¶ 6-7, at 5.  The PSR attributed 24.1 ounces of cocaine powder, and 21.6 ounces of cocaine base to Defendant as relevant conduct, converted to 12,336.79 kilograms of marijuana.  Id. at ¶ 13, at 7.

On September 16, 2004, Defendant's sentencing hearing began, and Defendant orally moved for new counsel.  (Tr. Sept. 16, 2004 Hrng, # 373, at 2-3.)  Defendant informed Judge Goodwin that the main issue between himself and Mr. Hively is "whether the drugs warrant a downward departure."  Id. at 3.

> THE DEFENDANT: The issue is whether the drugs in question warrant a downward departure.  Based upon the fact that we have 96 grams of cocaine and 30, 96 grams of cocaine base that actually has 30 grams of cocaine in it, the question of whether the drugs were usable and marketable is a serious question that needed to be addressed, and Mr. Hively will not in no way, shape, or form allow me to present this issue.
>
> It's basically to the point of it's not only that. It's issues involving my application for career criminal

4

> which is in my PSI.  On July 21st [sic; June 21] when I
> took this plea I informed Mr. Hively that if he was to
> contact Pennsylvania he would find, he may find
> information that this is a non-violent felony, which may
> be information that could be presented to the Court that
> would weigh on whether or not I'm actually in a career
> criminal category.  Mr. Hively informed me that he would
> do this.  Mr. Hively has not done it.

Id. at 4.  When Judge Goodwin asked whether Defendant was "somehow

misled into pleading guilty," Defendant replied,

> We went through a lengthy process in me accepting this
> plea because I did not believe this was a usable,
> marketable form of the drug.  As I said, I accept
> responsibility for being in possession of the gun and the
> drugs, but the question was whether or not it was a
> usable, marketable form of the drug.
>
> Mr. Hively in our discussions in the attorney/client
> room informed me that if I took this plea, I would still
> be able to challenge the drugs at sentencing, which is
> the same thing that I've been informing Mr. Hively that
> you told me, and this is one of the reasons why I took
> this plea. * * * [Mr. Hively] didn't tell me that I would
> be locked in at 50 grams and that I would be basically
> subjecting myself to 420 months in prison for 66 grams of
> baking soda and 30 grams of cocaine.

Id. at 6.

After additional colloquy, Judge Goodwin and Defendant had the

following exchange:

> THE COURT: So, I'm not trying to put words in your
> mouth, but here's what I understand from what you've said
> today and in answer to my questions.  And you correct
> anything I say that's not right.
>
> You've admitted that you're guilty of the crime of
> distribution, or distribution or conspiracy -
>
> THE DEFENDANT: Possession of 50 grams or more.
>
> THE COURT: Possession with intent to distribute 50
> or more grams of cocaine base.

THE DEFENDANT: Yes, sir.

THE COURT: But you are now concerned that Mr. Hively misled you as to the relevant conduct that might increase your sentence above the 30 years. Is that right?

THE DEFENDANT: No, sir. Mr. Hively informed me that I would be able to still challenge the drugs. Okay?

* * *

THE DEFENDANT: My understand, and I apologize if I was wrong here, was that though I pled guilty to the 50 or more grams, where the drugs, for want for a better word, were just so horrible, they, I mean, I could still challenge these drugs.

THE COURT: Challenge them in what fashion?

THE DEFENDANT: The – are they deserving of the 100 to 1 ratio, are they deserving of a downward departure.

THE COURT: * * * I think it's important you understand that the 50 or more grams establishes the mandatory minimum. Just by saying, "I'm guilty of possession with intent to distribute 50 or more grams of crack cocaine," which is what you did, that established the mandatory minimum of 25 years right there.

THE DEFENDANT: For want of a better word, I've been misled this whole entire case, I mean, from the beginning.

* * *

THE DEFENDANT: * * * [T]he actual 50 grams in this case is a cutting agent that must be separated from the actual cocaine base before the cocaine can be used.

I, I was of the, under the impression that I could move for at least a downward departure, that it not actually attack this 100 to 1 ratio when he informed me that this was a sentencing issue and not an issue to be presented in pre-trial motions.

Id. at 11-13.

After a recess, Judge Goodwin ruled as follows:

6

THE COURT: * * * I have a concern, however, with the assertion that Mr. Love makes that he was not advised as to the relevant conduct above the 30 years; that is, the 25-year mandatory minimum for the 50 grams and the 5 years for the gun.

I understood Mr. Hively to say to me that he may have told his client that the career, since he was a career offender, that would take care of the amount of the drugs. I'm not certain about that. But that's my impression, whether it's right or wrong.

Because the sentence is so long and the crime is so serious and that issues as presented to me by the statement of counsel and the defendant give me pause, I'm going to appoint new counsel for sentencing purposes only.

Id. at 16. David O. Schles was appointed to represent Defendant (# 279).

On October 4, 2004, Defendant, by counsel, filed a motion to withdraw his guilty pleas (# 275). The motion recites that Defendant's "primary (but not sole) argument is that insufficient proof exists to establish beyond a reasonable doubt that any substances with which he may have allegedly been involved were in fact "controlled substances." Id. at 3. Judge Goodwin conducted a hearing on the motion to withdraw guilty pleas on October 25, 2004 (# 295), and denied the motion (# 298).

The transcript of the October 25, 2004 hearing on the motion to withdraw guilty pleas reflects that Defendant and Herbert Hively testified. Defendant stated that he first saw the plea agreement just a few minutes before the guilty plea hearing took place. (Tr. Hrng, # 372, at 5.) He testified that he "didn't even actually

7

read it." Id. at 6.  Defendant stated that Mr. Hively spent only "a couple of minutes," explaining the plea agreement, but it was more like "a verbal sparring match."  Id. at 8.  For the first time, Defendant testified that Anthony Santura Smith actually possessed the cocaine base.

> [MR. SCHLES]: As to both Count Five and Six, do you assert your innocence as to either of the counts?
>
> THE DEFENDANT: Yes, sir.
>
> Q.  As to Count Five . . ., that on or about July 15, 2003, at or near Charleston, West Virginia, you possessed a controlled substance, namely cocaine base, in an amount of 50 plus grams and that you possessed that with the intent to distribute.
>
> A.  Correct.
>
> Q.  Do you understand what the elements of that offense are?
>
> A.  Correct.
>
> Q.  The first element is that you knowingly possessed.  Do you have a belief that you did not knowingly possess the controlled substance that was seized from your apartment on July 15th, 2003?
>
> A.  At no time did I possess this substance.
>
> Q.  And why do you believe this is so?
>
> A.  Because, for want of a better word, sir, I didn't know that substance was there.
>
> * * *
>
> A.  My belief is that Anthony Smith[, my cousin,] possessed the controlled substance that I've been indicted for.
>
> * * *

8

A. * * * On July the 15th when he came to my house, he had some drugs on him.  How much, I can't say to you. I did not know.

Q.  Did you see him with drugs at your apartment on July 15th, 2003?

A.  Yes, sir. * * *

Q.  Were you involved in the joint undertaking with Anthony Smith as partners or otherwise with regard to that amount of controlled substance?

A.  No, sir.

Q. * * * Did you have any intention to distribute the amount of controlled substances that were found in your apartment on July 15th, 2003?

A.  No, sir. * * *

Q.  And that you had no intent to distribute those drugs?

A.  My answer to that question is that I did not have 50 grams or more of cocaine base in my apartment. As to clarifying something else, I'll take the Fifth on that one.

Q. * * * Do you understand that there was also a firearm found in your apartment on July 15th, 2003?

A.  Yes, sir.

Q.  Why did you possess that firearm?

A.  To protect myself.

Q.  Did you possess it in furtherance of any drug trafficking activity?

A.  No, sir.

Id., at 22-26.  At the conclusion of his direct examination,

Defendant testified that he admitted guilt to Counts Five and Six,

although he did not consider himself to be guilty, "to save my

life, or what portion of it may be left after prison." Id. at 37-38.  In response to cross-examination, Defendant explained that "it's a choice between a life sentence and a chance at getting out. I took the less of two evils." Id. at 39.

Mr. Schles summarized Defendant's position as follows:

[M]y client's testimony was that at the time he entered the plea, it had not been explained to him that due to the operation of the statute in conjunction with the information charging a prior drug felony offense and the guidelines, that essentially he was pleading to 420 months, 35 years to life; and that in the absence of a substantial assistance motion, there was almost no possibility that any other sentence was possible.

* * * [E]ven to the extent he understands that he was facing a severe sentence under the plea agreement, what he did not understand was that there was no benefit to the plea agreement to him. * * *

He has asserted his legal innocence on several bases; that the drugs found in his apartment were not, in fact, his drugs and that he did not know that they were there at the time they were seized.  He has also asserted that because of that lack of knowledge, he had no intent to distribute the drugs.

And that even if there was to be found by a jury that they could infer constructive possession of the drugs, there was insufficient evidence to establish intent to distribute.

And, also, third is that he does not believe that the substances seized from his apartment on that day were 50 or more grams of cocaine base which, while he may have been guilty of an offense, would not be guilty of the greatest offense included in the indictment.

Id. at 97-98.

Judge Goodwin reviewed the factors to be considered when ruling on a motion to withdraw a guilty plea, quoted extensively

10

from the June 21, 2004 guilty plea hearing, reviewed the Rule 11
colloquy with Defendant and concluded:

> [After Defendant said, "Proceed with the plea,"] I
> did so, and I asked every question.  I even embellished
> some of the questions, and Mr. Love answered all of them,
> even volunteering information, telling me as to the gun
> charge that the gun was under the pillow, that it was
> loaded.  He volunteered that it was there to protect him
> because he had been shot before.  He answered that it was
> there to protect not only himself but the drugs.
>
> So, as to factor two [whether the defendant has
> credibly asserted his legal innocence], just for
> starters, I don't think the defendant's testimony today
> is a credible assertion of legal innocence.  He not only
> pled guilty in the legal colloquy, but in the lead-up to
> it repeatedly said, "I'm guilty of the crimes.  I've just
> got some other problems with this deal."
>
> * * * I don't know what the standard is if you were
> to try to explain it further than the definition of the
> word "credible," but I just don't find it credible.
>
>                         * * *
>
> I went through in detail about what the penalties
> were under the statute.  I told him about all the rights
> he had that he was giving up by entering into this plea
> bargain.  I told him did he understand he wouldn't even
> be able to withdraw his guilty plea if he changed his
> mind.  He said he understood that.
>
> I don't find any fact here that mitigates in favor
> of withdrawing the guilty plea except for the fact that
> he, his plea bargain's benefit is only the hope of
> getting a substantial assistance motion and a slim chance
> at acceptance of responsibility, and perhaps the idea,
> and this wasn't raised, but perhaps the thought, as any
> lawyer would think, that if the Judge didn't hear some of
> the things I might hear at trial, my sentence within the
> guideline range might be near the lower end than the
> higher end. * * *
>
> I don't see anything here that convinces me that I
> should grant this motion to withdraw.  I gave Mr. Love
> every chance to not plead guilty and actually encouraged

> him to think it over, took recesses, took different
> occasions to do it.  And I think what I have here, more
> than anything else, is an unfortunate, unfortunately, and
> I understand it because of the length of his sentence, is
> buyer's remorse.  The motion is denied.

Id. at 110-13.

Defendant filed several *pro se* motions, including one for self-representation (# 321).  After a hearing, that motion was granted on January 11, 2005, and sentencing was set for April 1, 2005 (# 332).  Defendant filed additional motions, including one for assistance of counsel and one to withdraw his guilty pleas (## 346, 353).  After a hearing on May 2, 2005, Defendant withdrew his motion to withdraw his guilty pleas, and, at Defendant's request, Judge Goodwin appointed David O. Schles as counsel of record (## 420, 425).

Sentencing took place on May 9, 2005; on May 13, 2005, judgment was entered (# 432).  Defendant was sentenced as a career offender to a total of 360 months of imprisonment, to be followed by a ten-year term of supervised release.  Id.  His career offender status was based on his prior convictions for second degree murder (Circuit Court of Kanawha County, West Virginia), and possession with intent to deliver marijuana (Court of Common Pleas, Northampton County, Pennsylvania).  (Presentence Investigation Report, "PSR," ¶¶ 32-34, at 10-11.)

Defendant's direct appeal was unsuccessful.  United States v. Love, No. 05-4538, 172 Fed. App'x 504, 2006 WL 525856 (4th Cir.

Mar. 2, 2006), cert. denied, 127 S. Ct. 1901 (Mar. 26, 2007).  The appeal challenged Judge Goodwin's denial of his motions to withdraw his guilty pleas and to subpoena Mr. Hively to the second hearing on Defendant's motion to withdraw guilty pleas.  He also appealed from the ruling that he is a career criminal, and from imposition of enhanced penalties due to his prior drug conviction.  Finally, he claimed that the 100:1 ratio between cocaine base and powder cocaine violated the Equal Protection Clause and created a disparity not adequately addressed in the sentencing guidelines.

Subsequently, Defendant, acting *pro se*, filed a series of motions attacking his conviction and sentence.  These motions were denied without prejudice on the ground that such challenges should be set forth in a § 2255 motion.  (Order entered Oct. 10, 2007, # 543).  Defendant moved for reconsideration of that Order, which was denied.  (Order entered October 25, 2007, # 546.)  Defendant appealed the denial of reconsideration, which was unsuccessful. United States v. Love, No. 07-7721, 269 Fed. App'x 259, 2008 WL 656890 (4th Cir. Mar. 10, 2008), cert. denied, 129 S. Ct. 442 (Oct. 14, 2008).

## GROUNDS FOR RELIEF

Defendant's original Petition states his grounds for relief as follows [*verbatim*]:

Ground one: The court lacked subject matter/original/ personal jurisdiction over this matter:
        1.  18 U.S.C. § 3231 is unconstitutional.
        2.  The distinct form of cocaine base, known

as crack, does not meet the requirements of 21 U.S.C. § 812(b)(2)(B), hence crack does not qualify as a Schedule II control substance.

3.   Love, not being a citizen of the United States, but a citizen of a sovereign nation-state who's laws, hence citizens, are foreign to the United States.

4.   The United States of America is comprimised of the judiciary branch of the federal government, which makes this court a party to the proceedings.

5.   The Constitution, per Article III - subjects of jurisdiction, does not support this court holding jurisdiction.

6.   Congress failed to promulgate regulations for the enforcement of 21 U.S.C. § 841(a)(1)-(b)(1)(A)(iii), and to set and establish minimum guidelines for the enforcement of statute by the United States Attorney.

7.   The term "cocaine base," as stated in section 841(b)(1)(A)(iii) does not qualify as a delineated term that would provide "fair warning" to those whom the term targets that "crack" is a form of cocaine base.

Ground two: Prosecutorial misconduct.

1.   Love was transferred to federal court for reasons that violate his constitutional rights.

2.   The United States knew, or should have known, that 18 U.S.C. § 3231 was unconstitutional, hence they proceeded before the court with unclean hands.

3.   The United States knew, or should have known, that "crack" does not have a currently accepted medical use, thus it does not meet the requirements of 21 U.S.C. § 812(b)(2)(B).

4.   The United States of America has failed to implement regulations with the Code of Federal Regulations that detail the application of the statute's of conviction.

5.   Neither 21 U.S.C. § 841(a)(1)-(b)(1)(A)(iii), or 18 U.S.C. § 924(c)(1)(A)(i) have been published in the Federal Register to provide society with notice.

6.   21 U.S.C. § 841(a)(1)-(b)(1)(A)(iii), combined with § 801 and 18 U.S.C. § 924(c)(1)(A)(i) and 28 U.S.C § 547(1), permit

14

no discretionary authority on the part of the
acting agency.
7.   The United States has pomulgated no
regulation that "crack" is a form of cocaine
base, nor have they pomulgated any regulations
governing the flow of crack through interstate
commerce.
8.   The U.S. Attorney committed fraud in the
inducement, thereby violating the contract.
9.   The conviction was obtained based upon
insufficient evidence.
10.   The United States breached the plea
agreement.
11.   The United States orally modified the
plea agreement.

Ground three: Ineffective assistance of counsel.
    A) Donald Stennett
    1.   Counsel failed to investigate the facts
    and law surrounding the case.
    B) Herbert L. Hively
    1.   Counsel failed to investigate the facts
    and law surrounding the case.
    2.   Hively deprived Love of the effective
    assistance of counsel.
    3.   Love's pleas of guilty was entered into
    unknowingly, based upon ineffective assistance
    of counsel.
    C) David O. Schles
    1.   Schles denied Love the right to the
    effective assistance of counsel by failing to
    adequately cross-examine Hively at the October
    25, 2005 hearing.  Such denied Love his right
    to due process of law, and the Sixth Amendment
    right to counsel.
    2.   Counsel failed to object to the fact that
    Love did not plead guilty to "crack" but only
    plead guilty to cocaine base.
    3.   Counsel denied Love the right to a
    effective appeal.

Ground four: Love reserves the right to bring additional
issues cognizable under the headings of grounds one-three
under this issue.

(Petition, # 564, at 7-9.)  Defendant's Motion (# 592) incorporates

the Petition's grounds for relief.

15

By Order entered April 9, 2008 (# 575), Defendant was permitted to add the following ground for relief:

> Ground three: Ineffective assistance of counsel
>     A) Donald Stennett and
>     B) Herbert L. Hively
>     Love stands convicted of a crime he did not
>     commit.

By that same Order, Defendant was permitted to incorporate into this § 2255 matter, various documents which he filed *pro se* in his criminal case, namely # 538-2, pages 4-32 ("Amended Motion to Dismiss for Lack of Jurisdiction to Adjudicate"), # 538-3 through -8 ("Attachments ## 1-15), # 524 ("Motion for Order"), # 525 ("Motion to Appoint Stand-by Counsel"), # 526 ("Judicial Notice"), # 527 ("Motion for Discovery"), # 528 ("Motion to Set for Hearing") and # 529 ("Second Motion for Discovery"). Documents 538-2, pages 4-32, and 538-3 through -8 will be considered in relation to Defendant's first ground for relief; the remaining motions (## 524-529) will be ruled upon in a separate order.

By Order entered June 10, 2008 (# 605), Defendant's motion to include additional issues (# 593) was granted, and he was given thirty days in which to submit two additional affidavits. The two additional affidavits (from Carmen Shelton and Nathan Hughes) were filed by Defendant on July 7, 2008, as attachments to his motion to submit additional arguments (# 615), which was granted by Order entered July 24, 2008 (# 620).

The United States responded in opposition (# 626), and

16

Defendant filed a reply (which he entitled "Response," # 641).

## ANALYSIS

### Ground one: Jurisdiction

Defendant's arguments that United States District Courts lack jurisdiction over federal criminal cases and that cocaine base, also known as "crack," does not qualify as a scheduled controlled substance, are simply frivolous.  He raises seven arguments, not one of which is supported by precedent.

### 1.  18 U.S.C. § 3231 is unconstitutional.

Defendant claims that Section 3231 is unconstitutional because it (*i.e.*, Public Law 80-772) was passed in violation of the rules of the House of Representatives and the Senate, and in violation of the Constitution of the United States.  (# 1, at 14.)  He presents extensive argument and numerous exhibits, chiefly excerpts from The Congressional Record, in support of his contention that the statute is invalid (# 538-2 through -8).  The undersigned finds none of the materials to be persuasive.  It is apparent that various federal inmates are sharing memoranda and exhibits espousing the unconstitutionality of § 3231 based upon Congress' alleged failure to enact the statute properly.  In Cardenas-Celestino v. United States, 552 F. Supp.2d 962, 966 (W.D. Mo. 2008), these meritless arguments were characterized as "a new rash of frivolous claims raised by prisoners across the country."  "All of these allegations concerning the supposed irregular adoption of Public Law 80-772

have been firmly denied by every court to address them." Id.  In United States v. Collins, 510 F.3d 697, 698 (7th Cir. 2007), the court concluded that the challenge to § 3231 was meritless.

**2.  Crack cocaine is not a scheduled controlled substance.**

Defendant asserts that crack cocaine does not have "a currently accepted medical use in treatment" and therefore does not meet the requirements for inclusion in any schedule of controlled substances.  Thus he contends that he is actually innocent of violating the Controlled Substances Act.  (# 542, at 18-19 [pages 46-47 according to Defendant's page numbering].)  This argument is frivolous; Defendant was convicted of violating a statute, 21 U.S.C. § 841(a)(1), not a regulation.

**3-7.  Citizenship; judiciary; Constitution; regulations; fair warning.**

For the reasons stated in the government's response, these claims in Defendant's first ground for relief are meritless and, in fact, frivolous.

### Ground two: Prosecutorial misconduct

Some of the claims set forth in Defendant's second ground for relief (claims 2-7) are reiterations of the frivolous claims in his first ground for relief, modified by the assertion that the United States "knew or should have known" of the alleged defects in 18 U.S.C. § 3231, the Controlled Substances Act and its regulations. These claims are as frivolous as those in the first ground for

18

relief.

Defendant also contends that the United States engaged in misconduct by prosecuting him in federal court (he should have been prosecuted in state court), by committing fraud in the inducement, having insufficient evidence, breaching the plea agreement, and orally modifying the plea agreement.  (# 542, at 33-36 [pp. 61-64], # 542-2, at 1-20 [pp. 77-96].)

## 1.  **Prosecution in Federal Court**

Defendant contends that his constitutional rights were violated because he was discriminated against, in violation of the Due Process Clause of the Fifth Amendment, for being a convicted felon.  (# 542, at 33 [p. 61]).  He complains that if he had been prosecuted in state court, he would have been released on bond, received a lesser sentence, and been incarcerated in West Virginia in a less violent atmosphere.  Id. at 35-36 [63-64].

This claim is frivolous; the United States Attorney is vested with discretion to choose which cases s/he will prosecute, so long as the defendant's conduct is charged to have violated a federal criminal statute.

## 8.  **Fraud in the inducement.**

This claim is based on Defendant's assertion that AUSA Spencer's proffer of a factual basis for Defendant's plea to possession with intent to distribute more than 50 grams of cocaine base was deficient, and that if Defendant had known in advance that

19

it would be deficient, he would not have pled guilty.  (# 542-2, at 1-3 [77-79].)

During Defendant's plea hearing, Judge Goodwin instructed Defendant that the United States "would have to prove beyond a reasonable doubt that you intended to distribute this controlled substance, the cocaine base."  (Tr. Plea Hrng, # 282, at 26.) Defendant stated that he considered himself to be guilty of the offense.  Id. at 27.  When Judge Goodwin asked him, "[w]hat did you have in mind to do with that cocaine base, if anything?," Defendant replied, "Sell it, recook it."  Id., at 28.  After that statement, AUSA Spencer gave a proffer, which omitted mention of Defendant's intent to distribute.   Id.  Given that Defendant had already admitted that he intended to distribute the cocaine base, the omission is inconsequential and this claim is without merit.

The undersigned notes that the presentence report indicates that "several controlled purchases of crack were made from Tawayne Love by a confidential informant, under the surveillance and direction of the Metro Drug Unit.  After the last controlled transaction on July 15, 2003, a search warrant was executed for the residence of Tawayne Love."  (PSR, ¶ 9, at 6.)  Discovery materials describing these controlled purchases were provided to Defendant and his counsel; there has never been any question that Defendant intended to distribute the large quantity of cocaine base found in his bedroom.

**9.   Insufficient evidence.**

This claim incorporates the same arguments as set forth in claim 8, above, and further asserts that the government's factual basis failed to mention how or why the firearm would further a drug trafficking crime. (# 542-2, at 4-6 [pp. 80-82].) The undersigned has already addressed the sufficiency of the evidence that Defendant intended to distribute the cocaine base.

With respect to the § 924(c) charge, Judge Goodwin instructed Defendant that the United States "would have to prove beyond a reasonable doubt that you knowingly and intentionally possessed the firearm described in the indictment in furtherance of that crime alleged in Count Five; that is, you possessed the firearm to further the distribution of the crack, cocaine base, that you had." (Tr. Plea Hrng, # 282, at 29.) Judge Goodwin then explained the element further: "A person possesses a firearm in furtherance of the crime alleged in Count Five when there's possession of a firearm, and that possession helped forward, advance, or promote the commission of the underlying drug crime. The mere possession of a firearm at the scene of the crime is not sufficient. It must have played some part in furthering the crime charged." Id. at 29. Even though Defendant had no questions or qualms about this description, Judge Goodwin described the element in more detail:

> To be guilty of this crime, then, there must be a showing of some connection, nexus between the weapon and the drug trafficking crime. The connection between the weapon and the drug trafficking crime can be established

by the type of drug activity that's being conducted, the accessibility of the firearm, the type of the weapon, whether the weapon was loaded, how close it was to the drug or drugs or drug profits, and time and circumstances under which the weapon was found.

For example, *if the weapon was possessed by you and was present to protect or secure illegal drugs, that would be possession in furtherance of a drug trafficking crime.*

On the other hand, if you just possessed the firearm but had no intention to use or show or have access to it to protect the drugs, that would be an example of mere possession of a firearm.

Id. at 29-30. [Emphasis supplied.]

After hearing these instructions, Defendant stated that he considered himself to be guilty of § 924(c)(1)(A)(i), and stated, "I possessed the firearm with drugs."  Id. at 31.  After further questioning by Judge Goodwin as to why he kept a pistol under his pillow in his bedroom, Defendant stated, "First off, I had just got shot a few months before this happened.  The main reason was to protect myself.  I guess you can construe that to be the drugs as well."  Id. at 32.  He admitted that the firearm was to protect himself "and the drugs."  Id.  Clearly there was ample evidence in Defendant's admissions to prove the essential elements of the offense.

**10.  Breach of plea agreement.**

Defendant claims that the United States breached the terms of paragraph 9 of its plea agreement with him.  (# 542-2, at 7-8 [pp. 83-84].)  That paragraph reads as follows:

22

9.  **FINAL DISPOSITION.**  The matter of sentencing is within the sole discretion of the Court.  The United States has made no representations or promises, and will make no recommendation, as to a specific sentence. However, the United States reserves the right to:

(a) Inform the Probation Office and the Court of all relevant facts and conduct;
(b) Address the Court with respect to the nature and seriousness of the offense;
(c) Respond to questions raised by the Court:
(d) Correct inaccuracies or inadequacies in the presentence report;
(e) Respond to statements made to the Court by or on behalf of Mr. Love;
(f) Advise the Court concerning the nature and extent of Mr. Love's cooperation; and
(g) Address the Court regarding the issue of Mr. Love's acceptance of responsibility.

(# 207, at 7.)   Defendant argues that the breach occurred at sentencing when AUSA John File made a statement regarding Defendant's sentence.   When the sentencing hearing was nearly concluded, Judge Goodwin asked, "Anything, Mr. File, you want to say before I impose sentence?"   (Tr. Disp. Hrng, # 454, at 54.) Mr. File replied, "Just with regard to sentencing, Your Honor, it's our view that a sentence within the guideline range [360 months to life imprisonment], although extremely high, is appropriate under the circumstances and would be a reasonable sentence given this defendant's prior conduct and the circumstances of the offense." Id.

It is plain that AUSA File did not make any recommendation as to a specific sentence.   A specific sentence would be "life imprisonment," or "480 months."   By merely commenting that the

23

applicable guideline range was "reasonable," Mr. File complied with the plea agreement.

**11. Oral modification of the plea agreement.**

Defendant asserts that the factual basis given by AUSA Spencer only detailed the elements of 21 U.S.C. § 844 (simple possession of crack cocaine), and 18 U.S.C. § 922 (felon in possession of a firearm). (# 542-2, at 9-20 [pp. 85-96].)  For the reasons set forth as to sufficiency of the evidence, Defendant's contention has no merit.

**Ground three: Ineffective assistance of counsel**

The Supreme Court addressed the right to effective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), in which the Court adopted a two-pronged test.  The first prong is competence; movant must show that the representation fell below an objective standard of reasonableness.  <u>Id.</u>, at 687-91.  There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel.  <u>Id.</u>, at 688-89.

> In order to meet the first prong, movant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

24

Id., at 690.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694. The court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack of prejudice. Id., at 697. In the context of a case in which a defendant pled guilty, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Fields v. Attorney General, 956 F.2d 1290 (4th Cir. 1992).

**Donald Stennett**

Donald Stennett was appointed to represent Defendant from shortly after his arrest on July 17, 2003 until February 18, 2004. Defendant's sole complaint about Mr. Stennett's representation is that he "failed to investigate the facts and law," in relation to the claims which Defendant has raised in grounds one and two (alleged jurisdictional defects and prosecutorial misconduct). (# 564-2, at 24 [p. 100].) Mr. Stennett submitted an affidavit which attests to his investigation and review of discovery material and his advice to Defendant (which Defendant ignored). (United States'

25

Response, Ex. K, # 626-14.)

The undersigned has addressed grounds one and two and their utter lack of merit. Mr. Stennett's alleged failure to investigate frivolous claims of lack of jurisdiction and prosecutorial misconduct does not constitute an act or omission outside the wide range of professionally competent assistance expected of counsel. Defendant contends that all three of his attorneys, Messrs. Stennett, Hively and Schles, failed to investigate the facts and law which he sets forth in grounds one and two. Id. As with Mr. Stennett, Messrs. Hively's and Schles' alleged failures to investigate these frivolous assertions do not constitute ineffective assistance of counsel.

**Herbert Hively**

Herbert Hively represented Defendant from late February, 2004 until October 7, 2004. Defendant's claims regarding Mr. Hively are found at pages 101-114 of his Petition (# 564-2, at 25-38). He identifies the following acts or omissions as constituting ineffective assistance of counsel: failure to challenge whether the cocaine base seized from Defendant's apartment was marketable (Defendant argues that it was not able to be smoked absent reprocessing); and failure to advise Defendant of the elements necessary to prove that the substance was "crack," as opposed to cocaine base.

Mr. Hively submitted an affidavit which states that

26

Defendant's guilty pleas were entered voluntarily and knowingly, and that the various motions which Defendant wanted to pursue lacked merit.  (# 626-10, Ex. G.)

Throughout the repeated hearings which comprised Defendant's entry of his guilty pleas and his repeated attempts to withdraw those pleas, Defendant raised an argument as to whether the cocaine base at issue was "marketable."  Defendant's claim that the cocaine base seized from his apartment was not able to be smoked is simply irrelevant.  The statute which Defendant, by his own admission, violated makes it "unlawful for any person knowingly or intentionally (1) to . . . possess with intent to . . . distribute, . . . a controlled substance."  21 U.S.C. § 841(a).  A "controlled substance" is "a drug or other substance, or immediate precursor, included in schedule . . . II."  21 U.S.C. § 802(6).  Schedule II includes "cocaine, its salts, optical and geometric isomers, and salts of isomers; . . . or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph."  21 U.S.C. § 812(c), Schedule II(a)(4).  The penalty for the offense which Defendant admitted that he committed is set forth in 21 U.S.C. § 841(b)(1)(A)(iii) as follows: "In the case of a violation of subsection (a) of this section involving . . . 50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base; . . . such person shall be sentenced to a term of imprisonment which may not be less than 20

27

years and not more than life imprisonment . . ..”  Clause (ii)
refers to “a mixture containing a detectable amount of . . .
cocaine.”  In other words, it does not matter whether the cocaine
base was “marketable,” “smokable,” usable, injectable, snortable,
or otherwise capable of being ingested; if the mixture weighed 50
grams or more, and the mixture contained cocaine base, §
841(b)(1)(A)(iii) applies.

It did not matter how many attorneys informed Defendant that
his theory was not a defense to the charge; Defendant persists in
arguing that the substance was not “crack” and that he is actually
innocent.  Saying so does not make it so.  It does not matter how
many affidavits are submitted by Defendant and his friends to the
effect that the cocaine base needed to be reprocessed, the fact
remains that the mixture weighed more than 50 grams, it contained
cocaine base, and Defendant admitted that he knowingly possessed it
with the intention of selling it.  Mr. Hively was not ineffective
because he declined to present evidence in support of Defendant’s
meritless theory.

**David O. Schles**

Defendant claims that he was denied effective assistance of
counsel because Mr. Schles (1) failed to cross-examine Mr. Hively
adequately at the hearing on the [first or second] motion to
withdraw guilty plea; (2) failed to object to the fact that
Defendant did not plead guilty to “crack,” but only pled guilty to

cocaine base; and (3) denied Defendant his right to an effective appeal. (# 564-2 at 39-50 [pgs. 115-126].)  As to the third claim, Defendant asserts that Mr. Schles had space in his brief to raise additional issues, that he should have raised the issue of whether federal district courts have subject matter jurisdiction, the issue of the voluntariness of the guilty pleas, and the government's alleged breach of the plea agreement.  Id. at 43-52 [pgs. 119-123].

Mr. Schles executed an affidavit which contains the following pertinent provisions:

14.  I have reviewed the portion of Mr. Love's petition alleging that I provided ineffective assistance of counsel.  In response:

A.  The cross-examination of Mr. Hively was intended to support the arguments that Mr. Love's plea was "not knowing or [was] otherwise involuntary" and that he lacked the "close assistance of counsel," . . .. Specifically questioning Mr. Hively as to whether he advised Mr. Love of the elements of the offense was not in my view necessary for several reasons.  First, I had no reason to suspect or anticipate that Mr. Hively would testified he had not fully explained the essential elements of the offenses to Mr. Love. Second, I knew at the time of the cross-examination that the Court had fully described and explained the essential elements of the offenses to Mr. Love during the Rule 11 colloquy and that prior to entering his guilty plea, Mr. Love had stated on the record that he did understand the essential elements of the offenses and the government's burden of proof.  Finally, I did question Mr. Hively as to whether he had discussed with Mr. Love that in order for the court to accept his guilty plea the Court would need to find a factual basis for the offense existed based on admissions Mr. Love made under oath.  Mr. Hively did testify on cross-examination that he had explained the necessity of the court finding that a factual basis

29

for the plea existed.  As a finding of a factual basis necessarily requires a finding that each essential element of the offense exists, it was, in my view, implicit in Mr. Hively's responses that he had discussed the elements of the offense with Mr. Love.

B.  The cross-examination of Mr. Hively I conducted was highly focused on whether Mr. Love understood that if he chose the alternative of accepting the plea offer tendered by the United States and pleading guilty he might receive no lesser sentence than if he chose the alternative of standing trial and whether Mr. Love entered his plea with an awareness of that possibility. * * *

C. Throughout the proceedings, Mr. Love believed arguing that he did not in fact possess a controlled substance and therefore should not be convicted of or sentenced for such possession was an issue to be raised.  Alternatively, Mr. Love would assert that the penalties for "cocaine base" or "crack" were not applicable to this case.  At the time this counsel was appointed, Mr. Love had already entered a guilty plea to possession with intent to distribute "cocaine base" or "crack." * * *

D.  At the hearing on the motion to withdraw the guilty plea at which this counsel represented Mr. Love, his assertion of factual innocence based on the theory that he did not possess "cocaine base" or "crack" was raised.  The Court, however, found this assertion failed to establish a credible assertion of factual innocence and denied the motion to withdraw his guilty pleas.  I also raised similar issues in the objections to the presentence investigation report and in a motion for downward departure.  The district court again ruled against Mr. Love, finding that he possessed "cocaine base" or "crack" and was subject to the penalties provided for the violation of the statute prohibiting its possession with intent to distribute.

E.   With regard to Mr. Love's assertion of ineffective assistance of counsel on appeal, in my judgment the Court of Appeals does not consider the

number of pages or words in a brief indicative of its merit and it is a sound tactic to present as concise a brief as possible.  The lack of persuasiveness of the issues that were presented is not in my judgment indicative of the merit of other issues that were not presented.  Space considerations played no role in my exercise of judgment as to which issues to present on appeal. I did determine that presenting arguments the federal courts lack subject matter jurisdiction under federal controlled substances statutes enacted by Congress, approved by the President and consistently found to be constitutional by the federal courts was not a good idea and did not do so.  No issues was raised on appeal alleging that the government violated the terms of the plea agreement with Mr. Love because I am aware of no facts to support such an allegation.  I did raise on appeal the issue of whether the district court erred in denying Mr. Love's motion to withdraw his guilty pleas, based primarily on arguments the record below established his plea was not knowing and voluntary, that he made a credible assertion of factual innocence based on his denial he possessed "cocaine base" or "crack" and that he lacked close assistance of counsel.  I also raised the issue that the district court committed reversible error by granting Mr. Hively's motion to quash and preventing Mr. Love from examining Mr. Hively at the hearing on his *pro se* motion to withdraw the guilty pleas.  That the Court of Appeals did not find the arguments persuasive is true, but the issues were raised and argued.

In conclusion, throughout the period I represented Mr. Love, I represented Mr. Love competently, effectively and zealously.  The decisions I made and courses of actions pursued with which Mr. Love takes issue, were good faith exercises of judgment taken in what I perceived to be the best interests of my client and consonant with my duties to Mr. Love and the tribunals before which I represented him.

(# 626-11, Ex. H, at 2-4.)

Defendant's complaints about Mr. Schles constitute a continuation of the disagreements he had with his attorneys as to

whether his meritless and frivolous arguments regarding district court subject matter jurisdiction and the difference between cocaine base and crack cocaine should have been laboriously litigated before this Court and then presented on appeal.

The undersigned proposes that the presiding District Judge **FIND** that Defendant was not denied effective assistance of counsel by any of his attorneys.

### Additional Issues (# 593)

In his motion to include additional issues, Defendant asserts that he was denied effective assistance of counsel by Mr. Hively because he failed to file a motion to dismiss Counts Five and Six of the superseding indictment and a motion to obtain expert services of a chemist, on the ground that the United States was incapable of proving the essential elements of the offenses. (# 593, at 2.) This claim is based on Defendant's contention that the cocaine base seized from his apartment needed to be reprocessed before it could be smoked. Id. at 5-9. Defendant included an affidavit from Scott Marshall which states that the cocaine base as described could not be smoked. Id. at 10-11. The undersigned has already addressed this ground for relief and concluded that it lacks merit.

Defendant further claims that he was denied effective assistance of counsel by all three of his attorneys because they failed to identify and argue an affirmative defense to Count Six,

*i.e.,* that he possessed the firearm for the sole purpose of protecting himself.  Id., at 14-17.  This ground for relief is inconsistent with Defendant's sworn statements at his plea hearing at which he stated that he possessed the firearm to protect himself and his drugs.  He was not denied effective assistance of counsel in this respect.

### Additional Grounds (# 615)

As noted above (page 16), the undersigned permitted Defendant to add additional grounds, which are found in the attachment to his Motion to Submit Additional Arguments (# 615, at 3-8).  The additional claims are that Defendant's attorneys denied him effective assistance of counsel because (1) they did not recognize that the grand jury foreperson did not sign the indictment, and (2) Defendant was convicted of a crime he did not commit.  Neither ground has any merit.

The undersigned has viewed both the original indictment and the superseding indictment returned by the grand jury and both are signed by the grand jury foreperson.

Defendant's argument that he was convicted of a crime that he did not commit is based on his assertion that the cocaine base found at his apartment actually belonged to his cousin, Anthony Smith.  (# 615, at 5.)  He acknowledges that he pled guilty to possession with intent to distribute the cocaine base, but notes that he testified, at the October, 2004 hearing on his motion to

withdraw his guilty plea, that the drugs were Smith's.  Id. at 4.
Defendant claims that Smith, Jimiea Carr (Defendant's girlfriend),
and co-defendants Marcellus Jabbar Thompson and Brian Corbett were
prepared to testify that the drugs were Smith's, but Smith and Carr
then declined to testify for fear that the government would not
file a motion for a downward departure based on their substantial
assistance.  Id. at 5-6.

Defendant attached affidavits from himself, Carmen Shelton,
and Nathan Hughes.  Defendant's affidavit states that Carr and
Smith refused to testify in his behalf.  Id. at 9.  Ms. Shelton's
affidavit states that the cocaine base seized at Defendant's
apartment on July 15, 2003, had too much baking soda in it, and she
was not able to smoke it.  Id. at 10-11.  Nathan Hughes' affidavit
states that he was transported by the Marshals Service on September
16, 2004, with Defendant and Anthony Smith:

> 3.  I heard Tawayne Love tell Anthony Smith that he was
> full of shit because he was about to get forever for
> drugs that was his.
> 4.  I heard Anthony Smith tell Tawayne Love that he had
> told the Feds during his debriefing that the dope found
> in his bedroom was his and that he had left it there
> until they came back from the barbershop and that he told
> the Feds that Tawayne never knew the drugs was there.
> 5.  Tawayne Love then told Anthony Smith that he was
> lying because he had never read his statement, and that
> if he had told the Feds that they wouldn't have let him
> plea to it.
> 6.  Anthony Smith then said that he told the black
> prosecutor, but he didn't believe him, that's why he
> never gave out his statement to anybody.

Id. at 12.

**Motion to Alter and/or Amend the Original Petition (# 660)**

Defendant filed this motion on September 4, 2009, asserting that the arguments contained therein relate back to his original petition and support his contention that he is actually innocent of the crimes to which he pled guilty. He attached an affidavit from Cecil Davis which recounts a conversation he had with Anthony Smith while they were incarcerated at the federal prison at Big Sandy, Kentucky. The affidavit states, in pertinent part, as follows:

> 5) [Anthony Smith] stated that Mr. Love tried to pay him a ½ a kilo of dope (crack) to kill the informant on his case and because of that the big conspiracy began.
>
> 6) I asked him what was that all about and he told me that he had left a little over 3 ounces of dope in Love's house without telling him. He said the cops found it and Love told him that unless he took care of the informant he was telling the FEDS.
>
> 7) I asked him was he actually saying that Love was in jail for dope that was his, and he replied yes. He then told me that he was going to tell the prosecutors this, after he plead guilty, but it was too late because Love had plead guilty to it.

(# 660, at 6-7.)

This claim was rejected by Chief Judge Goodwin, and his decision was affirmed on appeal. Love, 2006 WL 525856 *1. Grounds for relief which were adjudicated on direct appeal may not be raised in a § 2255 motion, absent a change in the law. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976).

**Defendant's Motion for Summary Judgment (# 637)**

Defendant raises four claims in his motion as follows:

35

1.   The United States failed to present a currently accepted medical use for the distinct form of cocaine base known as "crack."

2.   The United States failed to establish a proper factual bas[i]s for the pleas of guilty.

3.   The United States violated the plea agreement.

4.   Love stands convicted of a crime he did not commit.

These claims are reiterations of the grounds for relief set forth exhaustively in his Petition, Motion, and assorted affidavits and memoranda.

### Defendant's Motion for Sanctions (# 652)

This motion relates to Defendant's motion to strike (# 640), which was denied by Order entered August 27, 2009 (# 657).

### Proposed Findings

The undersigned proposes that the presiding District Judge **FIND** that Defendant's first ground for relief is frivolous, that the United States did not engage in prosecutorial misconduct, that Defendant was not denied effective assistance of counsel by any of his three attorneys, and that Defendant is not actually innocent of the charges to which he pled guilty.

### Recommendation

It is respectfully **RECOMMENDED** that Defendant's Amended Motion to Dismiss (# 538), Petition (# 564), § 2255 Motion (# 592), Motion for Summary Judgment (# 637),  Motion for Evidentiary Hearing (# 642), Motion for Sanctions (# 652), and Motion to Alter and/or

Amend Petition (# 660) be denied and this matter dismissed from the docket.

### Notice

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have ten days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on the United States Attorney, Chief

Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Defendant and to counsel of record.

November 2, 2009                          _Mary E. Stanley_____
     Date                              Mary E. Stanley
                                       United States Magistrate Judge

38