IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**TAWAYNE DEVONE LOVE,**

    **Movant,**

v.                                        **Case No. 2:03-cr-00187-1**
                                           **Case No. 2:08-cv-00192**

**UNITED STATES OF AMERICA,**

    **Respondent.**

## SECOND PROPOSED FINDINGS AND RECOMMENDATION

By Memorandum Opinion and Order entered January 12, 2010, the Hon. Joseph R. Goodwin, Chief Judge, granted a portion of Movant's ("Defendant") Motion to Alter or Amend Judgment Pursuant to Rule 59(e) (docket # 675) as follows:

> In his Rule 59(e) motion, the petitioner argues that the court "procedurally defaulted an actual innocence claim that has not been fully adjudicated on its merits." (Mot. Alter J. ¶ 5.) The petitioner argues the Magistrate Judge, in her Proposed Findings and Recommendation, did not assess the affidavits that Love had submitted to support his actual innocence argument. (*Id.*) Upon reconsideration, I agree. Although the Magistrate Judge referred to the affidavits, she did not assess their probative value. (Proposed Findings & Recommendation [Docket 666] 34-35.) She correctly noted that the petitioner's actual innocence claim had already been rejected by this court, but she failed to consider the new evidence submitted by the petitioner. (*Id.*) * * *
>
> The petitioner also objects that the issue of whether the government violated the plea agreement was wrongly decided. His Motion to Amend the Pleadings seeks to further bolster his argument on this issue. Since I have already decided to re-refer the actual innocence

> issue to the Magistrate Judge, I also re-refer the plea agreement violation issue and refer the petitioner's Motion to Amend the Pleadings [Docket 676] to the Magistrate Judge.

(Mem. Op. and Ord. entered January 12, 2010, # 677, at 1-2.)

The factual background and procedural history of this case have been set forth in detail in the Proposed Findings and Recommendation (# 666) filed on November 2, 2009, and in the Order entered May 21, 2010 (# 696), and will not be repeated here.

The United States filed its Memorandum Regarding Claims of Actual Innocence and Breach of Plea Agreement (# 682) on March 5, 2010, and Defendant filed his Memorandum with the same caption (# 693) on April 29, 2010. With leave of Court, the United States filed its First Supplement (# 691), and Defendant filed his Response (# 695).

By Order entered May 27, 2010 (# 697), this case was transferred to the Hon. Thomas E. Johnston, United States District Judge.

The Supreme Court of the United States established the principles which guide disposition of this case:

> We have strictly limited the circumstances under which a guilty plea may be attacked on collateral review. "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Mabry v. Johnson, 467 U.S. 504, 508, 104 S. Ct. 2543, 2546-47, 81 L. Ed.2d 437 (1984) (footnote omitted). And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. Habeas review is an extraordinary remedy and "'will not be allowed to do

2

service for an appeal.'" Reed v. Farley, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300, 129 L. Ed.2d 277 (1994) (quoting Sunal v. Large, 332 U.S. 174, 178, 67 S. Ct. 1588, 1590-91, 91 L. Ed.2d 1982 (1947)). Indeed, "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." United States v. Timmreck, 441 U.S. 780, 784, 99 S. Ct. 2085, 2087, 60 L. Ed.2d 634 (1979).

* * *

Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice," Murray v. Carrier, 477 U.S. 478, 485, 106 S. Ct. 2639, 2643-44, 91 L. Ed.2d 397 (1986); Wainwright v. Sykes, 433 U.S. 72, 87, 97 S. Ct. 2497, 2506-07, 53 L. Ed.2d 594 (1977), or that he is "actually innocent," Murray, supra, at 496, 106 S. Ct. at 2649-50; Smith v. Murray, 477 U.S. 527, 537, 106 S. Ct. 2661, 2667-68, 91 L. Ed.2d 434 (1986).

**Actual Innocence**

Chief Judge Goodwin is correct that in the first Proposed Findings and Recommendation ("PF&R"), the undersigned did not assess the probative value of the affidavits submitted by Defendant in support of his claim that he is actually innocent of the charges to which he pled guilty. The undersigned concluded that Defendant was attempting to raise in his § 2255 motion an issue which had been decided on appeal. (# 666, at 35.)

The first PF&R detailed Defendant's attempt to withdraw his guilty pleas, ultimately culminating in his withdrawing his request to withdraw his guilty pleas. Id. at 7-12. During that process, Judge Goodwin conducted an evidentiary hearing at which Defendant and his former lawyer, Herbert Hively, testified. Id. at 8-10.

3

Judge Goodwin made extensive findings concerning the testimony and denied the motion to withdraw the guilty pleas, concluding that Defendant had "buyer's remorse." Id. at 12.

On direct appeal, Defendant's primary issue was whether the district court erred by denying Defendant's motions to withdraw his guilty pleas. (Brief of Appellant, 2005 WL 2999958 *2.) With respect to whether Defendant credibly asserted his legal innocence, his Brief argued as follows:

> As to the second factor, Mr. Love did assert his legal innocence to the charges to which he pleaded guilty. Mr. Love's [sic] asserted essentially that insufficient proof existed to establish beyond a reasonable doubt that any substances with which he may have allegedly been involved were in fact the controlled substance identified in the indictment. Mr. Love also denied actual or constructive possession of the controlled substances, testifying that the drugs must have belonged to his co-defendant Mr. Smith and that he was unaware of their presence in his apartment. (J.A. 154-56) Love necessarily also repudiated any intent to distribute on the basis that one cannot have any intent to distribute something one does not possess or expect to possess in the future. (J.A. 157)
>
> The district court stated it did not find Mr. Love's assertions of innocence credible. However, Love would argue that the district court evaluated whether "persuasive" proof of innocence was submitted instead of determining whether the assertions were inherently lacking in credibility. Analyzing "whether the defendant has credibly asserted his legal innocence" is not the same as analyzing whether one has presented persuasive evidence of innocence.
>
> In any event, the analysis in this case should focus primarily [on] the voluntariness of his plea and the nature of assistance he received from counsel. * * * The issues are whether Mr. Love's beliefs rendered his plea involuntary and whether or not he had close assistance of counsel. This court does not have to find that Mr.

> Love's perception that "he had no choice" but to plead guilty because his lawyer would not help him is correct but whether he had that belief and that belief thus rendered his guilty plea involuntary.
>
> * * *
>
> Mr. Love did not have close assistance of counsel because he and Mr. Hively were at odds over how to proceed with the case. Mr. Love's state of mind was such that he did not believe Mr. Hively was willing to defend him at trial and that he had no choice but to plead guilty. * * *
>
> Here the issues are directly related to Love's state of mind as he entered his plea. Specifically, whether he was voluntarily pleading guilty and whether he had the faith and trust in his counsel to allow for the finding that he had close assistance of counsel. * * * The court should have viewed the attorney-client relationship subjectively from the perspective of Mr. Love and evaluated whether it was fair to conclude that the difficulties between Love and Hively were such that Love was without close assistance of counsel.
>
> Given that Mr. Love consistently and stridently complained about Mr. Hively's representation . . ., it appears accurate to state that, subjectively from Mr. Love's perspective, he did not have close assistance of counsel. * * * Mr. Love may or may not have been correct about the nature of his representation by counsel when viewed objectively, but there can be little question that he genuinely believed he did not have representation that could be characterized as close assistance of counsel.

Id. at *18-22.

The Brief of Appellee filed by the United States stated the following:

> Any attempt by defendant to assert legal innocence herein is laughable. He pled guilty to Count Five . . . and to Count six . . .. * * * Defendant's admissions, under oath, at the plea hearing further established his guilt: [quotations omitted].
>
> At a hearing on his motion to withdraw his guilty

>    plea defendant testified, under oath again, that he had lied to the court about his commission of the two offenses. J.A. 170-71. He testified that he had not, in fact, possessed the cocaine base, J.A. 154-57, and that he had not possessed the firearm in connection with drugs. J.A. 157-58. His protestations of innocence not only conflict with his prior sworn testimony, but also conflict with comments he made to the court at another prior hearing, which comments suggest that defendant never had a good faith basis for asserting his innocence and that he had always understood that he was likely to plead guilty.
>
> >    You know, I never asked that the case be prepared, quote unquote, for trial. I just asked for a pre-trial hearing where, one where I'm saying that histories was presented.
>
>    J.A. 76.
>
> >    I'm not going to say I feel – I'm going to use the words that I know that, though I accept the fact of, you know, the crimes that I committed. There's issues in this case that should have been addressed.
>
>    J.A. 78.
>
>    Defendant's suggestions, post-plea, that there were issues that should have been addressed flies in the face of his answers to the court's questions at the plea hearing – * * * Furthermore, at a hearing on defendant's motion, defendant actually withdrew his motion to withdraw his guilty plea. J.A. 308.

2005 WL 3606379 *14-18.

The Fourth Circuit Court of Appeals ruled that "[a]fter carefully reviewing the record, we find that the district court did not abuse its discretion in denying this motion to withdraw the guilty plea." United States v. Love, No. 05-4538, 172 Fed. App'x 504, 506 (4th Cir. 2006), cert. denied, 127 S. Ct. 1901 (2007). The Fourth Circuit noted that Defendant filed a second motion to

withdraw his guilty pleas and then withdrew his motion to withdraw. Id.

The United States argues that Defendant is barred from asserting his innocence now because the issue of his innocence was litigated on appeal, citing Boeckenhaupt v. United States, 537 F.2d 1182, 1182-83 (4th Cir. 1976) (issues previously decided on appeal will not be allowed to be recast under the guise of collateral attack), and United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district could should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements). (# 682, at 2-4.)

Defendant contends that Boeckenhaupt and cases following its holding are distinguishable because Defendant has offered affidavits which he claims support his claim of actual innocence. (# 693, at 2-4.)

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.

United States v. Broce, 488 U.S. 563, 569 (1989).

In United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993),

a case decided on direct appeal, the Fourth Circuit held that "[a] knowing, voluntary, and intelligent guilty plea to an offense conclusively establishes the elements of the offense and the material facts necessary to support the conviction." In Willis, the defendant pleaded guilty to using or carrying a firearm during or in relation to a drug trafficking crime even though the firearm had a broken firing pin. Id. The Fourth Circuit ruled that "[b]y pleading guilty, Willis relinquished his right to contest the meaning of 'firearm' or to challenge the sufficiency of the evidence presented as a factual basis for his guilty plea." Id. at 491.

Applying Broce and Willis to Defendant's case, his sworn statements at his guilty plea hearing conclusively established the elements of the offense and the material facts necessary to support his conviction. Defendant stated under oath that on July 15, 2003, he possessed more than 50 grams of cocaine base at his residence in Charleston, West Virginia. (Tr. Plea Hrng., # 282, at 27.) He admitted that he "possessed the firearm with drugs," to protect himself and the drugs. Id. at 31-32. He confirmed that the factual basis for the pleas provided by the Assistant United States Attorneys was true. Id. at 28, 33. Moreover, Defendant's guilty pleas were counseled and voluntary, as found by Chief Judge Goodwin, and affirmed on appeal. Chief Judge Goodwin adopted the undersigned's proposed findings that Defendant's complaints about

8

the effectiveness of his attorneys lacked merit.

In <u>United States v. White</u>, 366 F.3d 291, 295-96 (4th Cir. 2004), an appeal from denial of a § 2255 motion, the Fourth Circuit noted the Supreme Court's holding in <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977), that a defendant's solemn declarations in open court "'carry a strong presumption of verity'" and present "'a formidable barrier in any subsequent collateral proceedings.'" <u>Blackledge</u> held that, in addressing a collateral attack of a guilty plea, a court must determine "whether the allegations, when viewed against the record of the [Rule 11] plea hearing, were so palpably incredible, so patently frivolous or false as to warrant summary dismissal." 431 U.S. at 76. In <u>White</u>, the Fourth Circuit concluded that there was a material dispute as to whether the United States had promised the defendant a conditional plea, and remanded the case for an evidentiary hearing.

In <u>United States v. Lemaster</u>, 403 F.3d 216, 221-22 (4th Cir. 2005), the Fourth Circuit ruled that

> in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always "palpably incredible" and "patently frivolous or false." [Citations omitted.] Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements. Otherwise, a primary virtue of Rule 11 colloquies would be eliminated - "permit[ting] quick disposition of baseless collateral attacks," <u>Blackledge</u>,

9

431 U.S. at 79 n.19, 97 S. Ct. 1621 (1977).

Defendant's allegations in support of his claim of actual innocence are:

1. The controlled substances found in his bedroom belonged to his cousin, Anthony Smith. (# 615, at 4-5.) Mr. Smith has not provided an affidavit to that effect. Charleston, WV Police Lt. A.C. Napier, who participated in the investigation of Defendant, provided two declarations. In the first declaration, he stated that he was "not aware that Anthony Smith ever told a prosecutor or a law enforcement officer that the cocaine base seized from Love's residence was Smith's and not Love's." (# 682, Ex. 10, at 1.) In his second declaration, Lt. Napier wrote that he recently talked to Anthony Smith and that Smith stated that the drugs in Defendant's bedroom belonged to Defendant, and Defendant knew they were there. (# 691, Ex. 12, at 1.) Former Assistant United States Attorney Michael Spencer's declaration states that Spencer had conversations with Smith and that Spencer does not recall Smith ever telling Spencer that the drugs found in Love's bedroom were Smith's and not Love's. (# 682, Ex. 11, at 1.) Spencer believes that if Smith had claimed ownership of the drugs, Spencer would have remembered it. Id.

2. The cocaine base found in Defendant's bedroom had too much baking soda and was not smokeable. (Carmen Shelton's affidavit, # 615, at 10-11; Scott Marshall's affidavit, # 593, at 10-11.) This

is irrelevant, because it is illegal to possess a "mixture or substance containing a detectable amount of . . . cocaine," whether or not it is able to be smoked.

3. Nathan Hughes' affidavit states that he overheard Anthony Smith tell Defendant that Smith told "the Feds" that the drugs in Defendant's bedroom belonged to Smith and that Defendant did not know that Smith put the drugs there. (# 615, at 12.) Lt. Napier's second declaration reports that Smith denied that Smith told Love that Smith had told "the Feds" that the drugs were Smith's. (# 691, Ex. 12, at 1.)

4. Cecil Davis' affidavit states that Davis was in prison with Anthony Smith and that they had a conversation in which Smith admitted to leaving more than "3 ounces of dope in Love's house without telling [Love]." (# 660, at 6-7.) Lt. Napier's second declaration states that during Napier's conversation with Smith, Smith denied knowing Cecil Davis and denied having a conversation with Davis. (# 691, Ex. 12, at 1.) Davis' affidavit states that Smith said Smith <u>intended</u> to tell the prosecutors that the drugs found in Love's bedroom were Smith's, but Love had already pled guilty to possessing them (# 660, at 7); Hughes' affidavit states that Smith told Love that he had <u>already</u> told the prosecutors that the drugs were Smith's (# 615, at 12).

All of the affidavits recite hearsay from Anthony Smith and are in complete conflict. The inconsistencies among the affidavits

completely undermine the credibility of Smith. Defendant's inconsistent statements and behavior (he pled guilty, he moved to withdraw his guilty pleas, he received an adverse ruling, he moved again to withdraw his guilty pleas, he withdrew his motion to withdraw his guilty pleas, he appealed the adverse ruling, he challenges his guilty pleas now) similarly destroys his credibility and his various affidavits are not to be believed. The undersigned proposes that the presiding District Judge **FIND** that the inconsistent statements attributed to Anthony Smith by Defendant and others are in complete conflict and are not credible.

Finally, the United States has provided a redacted copy of the debriefing of Defendant dated July 25, 2004, in which Defendant admitting to purchasing the drugs which were found in his apartment. (# 682, Ex. 1, at 1.) Thus Defendant admitted to the drugs at his plea hearing and during an interview.

The undersigned proposes that the presiding District Judge **FIND** as follows:

1. There are no extraordinary circumstances presented in this case.

2. Defendant's allegations in his § 2255 motion directly contradict his sworn statements, made during a properly conducted Rule 11 colloquy, and are therefore "palpably incredible" and "patently frivolous or false."

3. Defendant's claim of actual innocence, despite his guilty

pleas, was litigated on direct appeal, and should not be allowed to be recast in his § 2255 motion.

### Breach of plea agreement

Defendant claims that the United States breached the terms of paragraph 9 of its plea agreement with him. (# 542-2, at 7-8 [pp. 83-84]; # 693, at 14-18.) That paragraph reads as follows:

> 9. **FINAL DISPOSITION.** The matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises, and will make no recommendation, as to a specific sentence. However, the United States reserves the right to:
>
> (a) Inform the Probation Office and the Court of all relevant facts and conduct;
> (b) Address the Court with respect to the nature and seriousness of the offense;
> (c) Respond to questions raised by the Court:
> (d) Correct inaccuracies or inadequacies in the presentence report;
> (e) Respond to statements made to the Court by or on behalf of Mr. Love;
> (f) Advise the Court concerning the nature and extent of Mr. Love's cooperation; and
> (g) Address the Court regarding the issue of Mr. Love's acceptance of responsibility.

(# 207, at 7.) The alleged breach occurred three times: in the government's sentencing memorandum, its supplement to its sentencing memorandum, and at sentencing.

The sentencing memorandum was filed in response to Chief Judge Goodwin's Order entered March 1, 2005 (# 367). In that Order, Judge Goodwin specified the topics to be covered in the memorandum, including the following: "each party may make an argument in the memorandum for a specific sentence <u>in the absence of a plea</u>

13

agreement provision to the contrary." Id. at 2. [Emphasis added.]

In the sentencing memorandum, under the heading "**Argument for Specific Sentence**," the United States (Assistant United States Attorney John File) submitted "that a sentence within the guideline range as set forth in the PSR [presentence report] would be reasonable and would satisfy the statutory objectives of sentencing." (# 417, at 7.)

In its supplement to sentencing memorandum, under the heading "**Conclusion**," the United States (AUSA File) wrote that "[a] sentence within the guideline range of 360 months to life would be appropriate under the circumstances of this case." (# 421, at 4.)

When the sentencing hearing was nearly concluded, Judge Goodwin asked, "Anything, Mr. File, you want to say before I impose sentence?" (Tr. Disp. Hrng, # 454, at 54.) Mr. File replied, "Just with regard to sentencing, Your Honor, it's our view that a sentence within the guideline range [360 months to life imprisonment], although extremely high, is appropriate under the circumstances and would be a reasonable sentence given this defendant's prior conduct and the circumstances of the offense." Id.

At the sentencing hearing, Defendant was determined to be a career offender, with a Total Offense Level of 37 and a Criminal History Category of VI, yielding a guideline range of 360 months to life imprisonment on Count Five, to be followed by a mandatory

14

consecutive term of 5 years on Count Six, and then a ten year term of supervised release. (Tr. Disp. Hrng., # 454, at 36.) The sentence actually imposed was 300 months on Count Five, followed by 60 months on Count Six, and then ten years on supervised release. Id. at 60.

The United States argues that "a specific sentence clearly means a particular term of imprisonment, e.g., 120 months, and not the entire applicable guideline range." (# 682, at 19.) In support of its position that it did not violate the plea agreement, the government relies on United States v. Lacy, No. 88-5516, 1990 WL 48824 (4th Cir. May 3, 1990), and United States v. Cook, 170 F. Supp.2d 653 (S.D. W. Va. 2001). The United States contends that its comments addressed the nature and seriousness of the offense and responded to statements made to the Court by or on behalf of Mr. Love, both of which are permitted by the plea agreement. (# 682, at 21.)

Defendant responds that the plain meaning of the agreement is that the United States traded away its right to make a sentencing recommendation in exchange for his guilty pleas. (# 693, at 14.) He challenges the applicability of the cases cited by the government because they pre-date United States v. Booker, 543 U.S. 220 (2005). Id. at 16. He points out that he is not complaining about the government's responses to his attorney's motions for downward departure because the United States did not give up their

15

right to respond to such motions. Id. at 17.

Defendant did not raise the issue of whether the United States violated the plea agreement on direct appeal. In fact, when Mr. File made his written and oral comments, no objection was made to them by Defendant and his attorney. Accordingly, Defendant procedurally defaulted this claim and must show cause and prejudice in order to raise it now. Bousley v. United States, 523 U.S. 614, 621-23 (1998). Defendant has shown neither. He has presented no argument identifying any "cause" for his procedural default. Assuming, arguendo, that the United States' comments regarding Defendant's possible sentence were in violation of the plea agreement, Defendant has not demonstrated that he suffered any prejudice as a result. Defendant's sentence as imposed (300 months on Count Five plus 60 months consecutive on Count Six) was below the applicable guideline range of 360 months to life imprisonment on Count Five, with a mandatory, consecutive 60 month term on Count Six.

The undersigned proposes that the presiding District Judge **FIND** that Defendant procedurally defaulted his claim that the United States breached the plea agreement and that Defendant has failed to show both cause and actual prejudice sufficient to excuse that default.

### Recommendation

It is respectfully **RECOMMENDED** that Defendant's Motion to

Amend Pleadings (# 676) be denied, that a final Judgment Order be entered denying Defendant collateral relief, and that this matter be dismissed from the docket.

### Notice

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United

States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on the United States Attorney, Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Defendant, and to transmit it to counsel of record.

May 28, 2010
    Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge

18