IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,

v.          CRIMINAL ACTION NO. 2:03-00187-01
           (CIVIL ACTION NO. 2:08-cv-00192)

TAWAYNE DEVONE LOVE,

   Defendant.

## MEMORANDUM OPINION AND ORDER

There are seventeen filings pending before the court, including Defendant Tawayne Love's Motion for Reduction of Sentence pursuant to the First Step Act. [ECF No. 786]. Mr. Love is a federal prisoner, who has been incarcerated for eighteen years or 38% of his life, largely based on his status as a career offender at sentencing. A defendant is a career offender under the United States Sentencing Guidelines if, among other things, "the defendant has at least *two* prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a) (emphasis added). One of Mr. Love's qualifying felony convictions was for Possession with Intent to Deliver Marijuana in violation of Pennsylvania law. Since his marijuana conviction nearly 30 years ago, federal and state law reflect a radical policy shift towards the decriminalization of marijuana, which mirrors the contemporary views of society.

Indeed, on October 6, 2022, President Joe Biden "pardoned all . . . federal offenses of simple marijuana possession" since it became a crime in the 1970s and tasked the Department of Health and Human Services with "review[ing] how marijuana is scheduled under federal law." Kevin Liptak, *Biden pardons all federal offenses of simple marijuana possession in first major steps toward decriminalization*, CNN (Oct. 6, 2022, 5:39 PM), https://www.cnn.com/2022/10/06/politics/marijuana-decriminal ization-white-house-joe-biden. The President encouraged governors to similarly pardon individuals convicted of state marijuana possession. *Id.*

Given the changing laws and views around marijuana, if Mr. Love was sentenced today, I would not consider his marijuana conviction when imposing his sentence, as it does not "promote respect for the law" to enhance Mr. Love's sentence based on his conviction on one hand while the substance for which he was convicted is being decriminalized on the other. *See* 18 U.S.C. § 3553(a). At bottom, I cannot find it fair to preserve a 25-year sentence that rests in part on a marijuana conviction. For this and all of the reasons discussed below, Mr. Love's Motion to Reduce Sentence, [ECF No. 786], is **GRANTED**.

First, I will address Mr. Love's Motion to Reduce Sentence [ECF No. 786]. I will address the remaining motions at the end of this opinion.

## I.  Background

On June 21, 2004, Mr. Love pleaded guilty to one count of Possession with Intent to Distribute 50 Grams or More of Cocaine Base and one count of Possession of a Firearm in Furtherance of a Drug Trafficking Crime. [ECF No. 202]. At the time,

2

a conviction for Possession with Intent to Distribute 50 Grams or More of Cocaine Base carried a mandatory minimum sentence of 10 years imprisonment. 21 U.S.C. § 841(b)(1)(A). A conviction for Possession of a Firearm in Furtherance of a Drug Trafficking Crime carried a mandatory minimum sentence of 5 years imprisonment, to be served consecutively to any other penalty. 18 U.S.C. § 924(c)(1)(A)(i). The potential maximum sentence for each conviction was life imprisonment. *Id.*; 21 U.S.C. § 841(b)(1)(A).

In this case, the Government filed an information pursuant to 21 U.S.C. § 851 qualifying Mr. Love as a repeat offender. [ECF No. 151]. A defendant is a repeat offender if he committed the violation for which he is being sentenced "after a prior conviction for a felony drug offense has become final." 21 U.S.C. § 841(b)(1)(A). Under that scheme, if the Government properly filed an information listing the qualifying felony, then the defendant was subject to a mandatory minimum penalty of 20 years imprisonment. *Id.* Here, the Government properly filed an information listing Mr. Love's 1994 Pennsylvania conviction for possession with intent to distribute marijuana. [ECF No. 151]. Accordingly, at the time of his sentencing, Mr. Love faced a mandatory minimum sentence of 25 years: a 20-year mandatory minimum as a repeat offender convicted of Possession with Intent to Distribute 50 Grams or More of Cocaine Base, and a 5-year mandatory minimum to be served consecutively to any other term of imprisonment for his gun charge.

3

At sentencing, I used the Sentencing Guidelines to calculate Mr. Love's advisable sentencing range. I found that the amount of cocaine base attributable to Mr. Love was 86.4 grams of cocaine base,[1] which under the 2004 Guidelines established a base offense level of 32. U.S.S.G. § 2D1.1(c)(4) (2004). He received a 2-level enhancement for obstruction of justice under § 3C1.1 because Mr. Love, at a hearing on his motion to withdraw his guilty plea, provided materially false information to the court. That enhancement increased his offense level to 34. [ECF No. 454, at 5:16–7:17]. His Criminal History Category as calculated by the Guidelines was IV. [ECF No. 784, at 10]. However, I applied the career offender enhancement pursuant to § 4B1.1, increasing his total offense level to 37 and automatically placing his criminal history at Category VI. [ECF No. 454, at 24:2–5].

Therefore, Mr. Love's Sentencing Guidelines range for his drug charge was 360 months to life imprisonment, followed by a mandatory consecutive term of 5 years (60 months). *Id.* at 36:9–23. I sentenced Mr. Love to a term of imprisonment of 300 months followed by 10 years of supervised release for his drug charge, and a term of imprisonment of 60 months followed by 5 years of supervised release for his gun charge. [ECF No. 432]. The terms of imprisonment on each charge run consecutively,

---

[1] Mr. Love's Presentence Investigation Report ("PSR") noted that it was readily provable that Mr. Love possessed 596.19 grams of powder cocaine and 610.64 grams of cocaine base, based on statements from several of his co-conspirators. However, the Government filed a supplemental sentencing memorandum asserting that it would not attempt to attribute to Defendant any drug amount beyond the 86.4 grams seized upon Mr. Love's arrest. I therefore calculated Mr. Love's base offense level using only the 86.4 grams of cocaine base, without including the additional 524.24 grams of cocaine base and 596.19 grams of cocaine powder identified in the PSR. [ECF No. 454, at 35:22–24].

4

for a total of 360 months, and the terms of supervised release run concurrently on each charge, for a total of 10 years. [ECF No. 454, at 61:5–10].

On May 13, 2019, Mr. Love filed a Motion to Reduce Sentence pursuant to section 404(b) of the First Step Act. [ECF No. 786]. I found that Mr. Love was entitled to some relief under section 404(b) and granted his motion insofar as I reduced his sentence of supervised release from a term of 10 years to a term of 8 years. [ECF No. 796]. I denied his Motion regarding his term of imprisonment. *Id.* On August 6, 2020, the United States Court of Appeals for the Fourth Circuit vacated that decision and remanded for reconsideration in light of *United States v. Chambers*, 956 F.3d 667 (4th Cir. 2020), which was issued after my ruling on Defendant's Motion. *See United States v. Love*, 814 F. App'x 779, 780 (4th Cir. 2020).

On October 5, 2020, I again granted in part and denied in part Mr. Love's Motion. [ECF No. 814]. After recalculating the Guidelines as required by *Chambers*, I found that Mr. Love's Guidelines range was not changed by intervening law. *Id.* at 6. In light of this, I again granted his Motion in so far as I reduced his sentence of supervised release from a term of 10 years to a term of 8 years but denied his Motion in regard to his term of imprisonment. *Id.* at 10. On June 7, 2021, the Fourth Circuit vacated that decision and remanded for reconsideration in light of *United States v. Collington*, 995 F.3d 347 (4th Cir. 2021), and *United States v. Lancaster*, 997 F.3d 171 (4th Cir. 2021), which were issued after my ruling on Defendant's Motion. *United States v. Love*, 849 F. App'x 417, 417 (4th Cir. 2021). The Fourth Circuit instructed

me to fully address Mr. Love's "argument that he was no longer a career offender under current law" and to more fully address the § 3553(a) factors, including Mr. Love's post-conviction conduct. *Id.* at 418.

The First Step Act of 2018 expressly allows courts to modify a term of imprisonment. *United States v. Wirsing*, 943 F.3d 175, 184 (4th Cir. 2019). Modifying a sentence under § 3582(c)(1)(B) does not require a hearing or a defendant's presence. *See, e.g.*, *United States v. Jackson*, No. 3:99-00015-05, 2019 WL 6245759, at *2 (S.D. W. Va. Nov. 21, 2019) ("Whether or not a court decides to resentence a defendant, the language of the First Step Act does not require a hearing."); *Wright v. United States*, 393 F. Supp. 3d 432, 441 (E.D. Va. 2019), *order amended and superseded*, 425 F. Supp. 3d 588 (E.D. Va. 2019). "It is within the sound judgment of the Court to determine if an evidentiary or sentencing hearing is necessary to address the issues of a particular case." *Jackson*, 2019 WL 6245759, at *2. As I previously reasoned, a hearing in this case on Defendant's Motion is unnecessary.

## II. Statutory Penalties

As I previously held, Mr. Love is eligible for a sentence reduction under section 404(b) of the First Step Act. *See* [ECF No. 796]. Congress passed the First Step Act to remedy the prior disparate treatment of crimes involving cocaine base (also known as crack cocaine) and powder cocaine. *Wirsing*, 943 F.3d at 176–77. The Act authorized courts "to provide a remedy for certain defendants who bore the brunt of a racially disparate sentencing scheme." *Chambers*, 956 F.3d at 674. Section 404(b) directs that a sentencing court may, upon a defendant's motion, "impose a reduced

6

sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act § 404(b). Thus, any defendant sentenced before August 3, 2010—the effective date of the Fair Sentencing Act—and who did not receive the benefits of sections 2 and 3 of the Fair Sentencing Act is eligible for a sentencing reduction under the First Step Act.

Section 2 of the Fair Sentencing Act increased the amount of cocaine base required to trigger the highest mandatory minimum punishments. Prior to the Fair Sentencing Act, Possession with the Intent to Distribute 50 Grams or More of Cocaine Base carried mandatory penalty of 10 years to life imprisonment, followed by a term of supervised release of at least 5 years. 21 U.S.C. § 841(b)(1)(A)(iii) (2002). The Fair Sentencing Act amended 21 U.S.C § 841(b)(1)(A)(iii) to require 280 grams of cocaine base to trigger the associated minimum and maximum penalties. Distribution of 50 Grams or More of Cocaine Base now carries a mandatory penalty of 5 to 40 years of imprisonment, followed by a term of supervised release of at least 4 years. 21 U.S.C. § 841(b)(1)(B)(iii) (2020). Because Mr. Love was convicted before the enactment of the Fair Sentencing Act, and he was convicted for an offense whose punishment was revised by the Fair Sentencing Act, he is eligible for a reduction in sentence under the First Step Act. *See Wirsing*, 943 F.3d at 186. I must therefore consider Mr. Love's statutory exposure under 21 U.S.C. § 841(b)(1)(B)(iii).

With the benefit of the Fair Sentencing Act of 2010, a defendant convicted of Possession with Intent to Distribute 50 Grams or More of Cocaine Base faces a

mandatory penalty of 5 to 40 years imprisonment. However, Mr. Love's statutory penalties were increased due to his status as a repeat offender. At the time Mr. Love was sentenced, a defendant was subject to enhanced penalties as a repeat offender if he committed the instant offense "after a prior conviction for a felony drug offense has become final." 21 U.S.C. § 841(b)(1)(A) (2002). Here, the Government properly filed an information pursuant to 21 U.S.C. § 851 listing Mr. Love's 1994 Pennsylvania conviction for possession with intent to distribute marijuana, in violation of title 35, section 780-113(a)(30) of the Pennsylvania Consolidated Statutes, as a qualifying predicate offense. [ECF No. 151].

Section 401 of the First Step Act modifies the requirements that qualify a defendant as a repeat offender. First Step Act § 401(a). Specifically, it narrows the category of prior controlled substance convictions and adds certain prior violent convictions that can qualify a defendant as a repeat offender. *Id.* Section 401, however, does not authorize the court to amend Mr. Love's sentences because Congress did not give it retroactive effect. *Id.* § 401(c); *United States v. Braxton*, 789 F. App'x 396, 397 (4th Cir. 2020). Mr. Love, therefore, is not eligible to benefit from this change because section 401 is not retroactive.[2] I therefore will recalculate Mr. Love's statutory penalties with the benefit of section 2 of the Fair Sentencing Act, as required by section 404 of the First Step Act. Section 404(b) places Mr. Love's

---

[2] I note however, that had he been sentenced with the benefit of § 401(a), his 1995 conviction for second degree murder would qualify him as a repeat offender and would subject him to the enhanced penalties of 21 U.S.C. § 841(b)(1)(B).

conviction for Possession with Intent to Distribute 50 Grams or More of Cocaine Base under 21 U.S.C. § 841(b)(1)(B), rather than § 841(b)(1)(A). Because Mr. Love remains a repeat offender, he qualifies for those enhanced penalties, as outlined in § 841(b)(1)(B). Mr. Love's statutory penalty for his drug charge is therefore a mandatory sentence of 10 years to life imprisonment followed by a term of supervised release of 8 years. 21 U.S.C. § 841(b)(1)(B). His mandatory 5-year penalty for his gun charge, served consecutively, remains unchanged.

## III.   Sentencing Guidelines

Having determined Mr. Love's statutory penalties, I must now consider whether his sentence as applied is reasonable in light of changes made under the First Step Act. The Fourth Circuit has outlined a three-step process when considering a motion under the First Step Act: (1) "district courts must accurately recalculate the Guidelines sentence range," (2) "district courts must *correct* original Guidelines errors and apply intervening case law made retroactive to the original sentence," and (3) "the court must consider the § 3553(a) factors to determine what sentence is appropriate." *Collington*, 995 F.3d at 355. This recalculation of the Guidelines must also include a correction of Guidelines errors based on non-retroactive changes in the law. *Lancaster*, 997 F.3d at 176–77.

Since Mr. Love's original sentencing, Amendment 782 to the Guidelines modified the Drug Quantity Table, lowering the base offense levels assigned to different amounts of cocaine base. Amendment 782 is retroactive. *See* U.S.S.G. § 1B1.10 (2018). Therefore, it is appropriate to apply Amendment 782 to Defendant's

case. *See Chambers,* 956 F.3d at 672. Under the amended Drug Quantity Table, 86.4 grams of cocaine base establishes a base offense level of 24. *See* U.S.S.G. § 2D1.1(c)(8). I again apply the 2-level enhancement for obstruction of justice, increasing the total offense level to 26. Given Mr. Love's Criminal History Category of IV, his Guidelines range would be 92 to 115 months imprisonment without the career offender enhancement. The question remains, therefore, whether Mr. Love is a career offender in light of intervening case law. *See Lancaster*, 997 F.3d at 176–77.

Under United States Sentencing Guidelines Manual § 4B1.1, a defendant is a career offender if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Section 4B1.2 defines a controlled substance offense as one:

> punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Mr. Love asserts that he is no longer a career offender under the Guidelines, arguing that his conviction in Pennsylvania for possession with intent to deliver marijuana in 1994 does not qualify as a controlled substance offense under § 4B1.2. Mr. Love was convicted in 1994 under title 35, section 780-113(a)(30) of the Pennsylvania Consolidated Statutes, which prohibited:

10

> the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

A controlled substance is defined as a "drug, substance, or immediate precursor included in Schedules I through V of this act." 35 Pa. Cons. Stat. § 780-102. Marijuana is a controlled substance in Schedule I. *Id.* § 780-104. Any person convicted of violating section 780-113(a)(30) with respect to a non-narcotic substance classified in Schedule I, II, or III faced a term of up to 5 years imprisonment. *Id.* § 780-113(f)(2).

I use the categorical approach to determine whether a specific conviction is a "controlled substance offense" for purposes of a Guidelines career offender analysis. *United States v. Dozier*, 848 F.3d 180, 183 (4th Cir. 2017). Under the categorical approach, a court examines "the state statute defining the crime of conviction" and compares it with the relevant federal law—here, the federal controlled substance schedules. *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) (internal quotation marks omitted); *see also Mathis v. United States,* 579 U.S. 500, 504 (2016); *Taylor v. United States*, 495 U.S. 575, 599–600 (1990). If the state statute penalizes conduct not covered by its federal comparator, then the state statute is "overbroad" and, generally, a conviction under that statute cannot be a predicate offense for career offender status. *See Descamps v. United States*, 570 U.S. 254, 261 (2013).

But finding a state statute overbroad is not always the end of the inquiry. Some overbroad statutes are "divisible" because they set forth multiple crimes with varying elements, and some of the crimes set forth therein would pass the categorical inquiry

if examined on their own. *Mathis*, 579 U.S. at 505. Courts examining a divisible statute employ the "modified categorical approach," which entails an examination of a "limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* at 505–06; *see also Shepard v. United States*, 544 U.S. 13, 26 (2005). The modified categorical approach "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." *Descamps*, 570 U.S. at 263. On the other hand, a statute is indivisible, and not subject to the modified approach, if it simply identifies alternative means by which a violation of the single enumerated crime can be accomplished. *Mathis*, 579 U.S. at 506.

Thus, "[t]he first task for a . . . court faced with an alternatively phrased statute is . . . to determine whether its listed items are elements or means." *Id.* at 517. "If they are elements," the court applies the modified categorical approach, "review[ing] the record materials to discover which of the enumerated alternatives" was the basis for the defendant's conviction, and then "compar[ing] that element (along with all others [relevant in the particular context]) to those of the generic crime." *Id.* But if the listed alternatives are means, then the court "has no call to decide which of the statutory alternatives was at issue in the earlier prosecution." *Id.*

When making this critical determination—elements or means—the Supreme Court has directed courts to look first to "authoritative sources of state law." *Id.* at 518; *see also United States v. Jackson*, 713 F. App'x 172, 175 (4th Cir. 2017) (per

curiam). When a state's judiciary has addressed the question, a court "need only follow what it says." *Mathis*, 579 U.S. at 518. If "state law fails to provide clear answers," then a court may look to "the record of [the] prior conviction itself" to discern if statutory alternatives are elements or means. *Id.*; *see also Descamps*, 570 U.S. at 264 n.2.

In *Taylor*, the Supreme Court considered whether a defendant's prior burglary conviction, where the statute outlawed entry into both a building and an automobile, constituted a "crime of violence" to trigger enhanced penalties under the Armed Career Criminal Act. 495 U.S. at 602. The Court had previously held that only burglary of a building could count as a predicate offense. *Id.* at 599. The Court found that the burglary statute was divisible because a jury would have to decide which of the alternatives, building or automobile, had been proved to return a conviction. *Id.* at 602. In other words, entry into a building and entry into an automobile were elements of separate crimes, rather than alternative means of committing the same crime. *Id.*

Here, section 730-113(a)(30) is divisible both by the controlled substance implicated and the action for which Mr. Love was convicted. The Third Circuit has found that the statute is divisible by the controlled substances implicated because the type of controlled substance determines the punishment a defendant receives. *United States v. Abbott*, 748 F.3d 154, 159 (3d Cir. 2014). I agree with the Third Circuit and find that section 780-113(a)(30) is divisible by the controlled substance involved. I

likewise find that the statute is divisible by the action for which the defendant was convicted. The statute prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver" a controlled substance, each of which constitutes an alternative element of a separate crime, and the action can affect the punishment the defendant receives. *E.g.*, 35 Pa. Cons. Stat. § 780-113(k). In other words, to return a conviction, a jury would have to find which of the alternative actions—manufacture, delivery, or possession with intent—the defendant committed.

Having determined that the statute is divisible, I may look to the underlying charge to determine which conduct and which controlled substance were involved in Mr. Love's conviction. Mr. Love was convicted under section 780-113(a)(30) for possession with intent to deliver marijuana, and this is the conviction that I will compare with the Guidelines' definition of controlled substance offense to determine whether it is a predicate offense for the Guidelines' career offender enhancements.

Mr. Love argues that the Pennsylvania statute is overbroad in that it criminalizes a mere offer to sell a controlled substance. Although this statute does not mention "mere offers" to sell controlled substances, I am aware of the Fourth Circuit's ruling in *United States v. Campbell*, holding that a similar statute does not meet the Guidelines' definition of a "controlled substance offense" for the purposes of the career offender enhancement. 22 F.4th 438 (4th Cir. 2022). The West Virginia statute at issue in that case forbid any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance. *Id.* at 441–42 (citing W.

Va. Code § 60A-4-401(a)). The defendant was convicted of "delivery of crack cocaine." *Id.* at 440. The statute defines the term "deliver" as "the actual, constructive *or attempted* transfer from one person to another" of a controlled substance. *Id.* at 442 (citing W. Va. Code § 60A-1-101(a)). On the back of that definition, the court determined that the least culpable conduct criminalized by a conviction for delivery of crack cocaine is "an attempt to deliver a controlled substance," and attempt crimes cannot be predicate offenses for career offender status. *Id.*

*Campbell* does not apply here. While the Pennsylvania statute at issue here prohibits the same conduct and uses the same definition of deliver as the West Virginia statute at issue in *Campbell*, the Pennsylvania statute is divisible, and Mr. Love was convicted of possession with intent to deliver marijuana, not delivery of marijuana. Even considering the Fourth Circuit's ruling that, using the statute's definition, "deliver" can mean "attempt to deliver," the least culpable conduct criminalized by "possession with intent to deliver" is not an attempt crime. As Pennsylvania law explains, "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward commission of that crime." 18 Pa. Cons. Stat. § 901(A) (1994). A person, therefore, cannot possess a controlled substance with intent to attempt to deliver—he must possess the controlled substance with intent to deliver. Accordingly, a conviction for possession with intent to deliver a controlled substance, in violation of section 780-113(a)(30), remains a "controlled substance offense" within the Guidelines' definition.

15

Finally, Mr. Love argues that the statute is overbroad because of recent amendments in the federal drug schedule regarding marijuana and hemp. However, pursuant to Fourth Circuit precedent, Mr. Love is as much a career offender under the Guidelines now as he was at his sentencing. At least one federal court has found that section 780-113(a)(30) cannot be a controlled substances offense under the Sentencing Guidelines. *United States v. Miller*, 480 F. Supp. 3d 614, 621 (M.D. Pa. 2020). The court reasoned in *Miller* that because the Farm Bill explicitly carved out hemp—which is derived from the same plant as marijuana—from the Controlled Substances Act, any state statute that fails to make the same distinction is overbroad. *Id.* The court relied on the idea that, in order to qualify as a predicate controlled substances offense, the controlled substances covered by a state statute must exactly match up to those regulated by the federal Controlled Substances Act. *See United States v. Townsend*, 897 F.3d 66, 69 (2d Cir. 2018); *United States v. Gomez-Alvarez*, 781 F.3d 787, 793 (5th Cir. 2015); *United States v. Leal-Vega*, 680 F.3d 1160, 1166 (9th Cir. 2012); *United States v. Sanchez-Garcia*, 642 F.3d 658, 661 (8th Cir. 2011). The Fourth Circuit has firmly rejected this idea. *United States v. Ward*, 972 F.3d 364, 374 (4th Cir. 2020).

The Fourth Circuit found it unnecessary to inject the Controlled Substance Act's "controlled substance" definition (i.e., the federal drug schedule) into the career offender calculations. *Id.* at 373. After all, states need not restrict themselves to regulating only those substances listed on the federal schedule. *Id.* Rather, a

16

"controlled substance" is "*any type of drug* whose manufacture, possession, and use is *regulated by law.*" *Id.* at 371 (quoting Black's Law Dictionary) (emphasis in original). Therefore, in the Fourth Circuit, any state statute prohibiting the distribution of a substance on that state's drug schedule is a controlled substance offense for the purposes of the Guidelines' career offender calculations. *Id.*

I am bound to follow precedent from the Fourth Circuit. Pursuant to this Circuit's definition, Pennsylvania's statute prohibiting the manufacture, distribution, or possession with intent to distribute a substance regulated through the state's drug schedule is a controlled substance offense. Therefore, Mr. Love is a career offender under the Guidelines: (1) he was over the age of 18 at the time he committed the instant offense, distribution of cocaine; (2) the instant offense, distribution of cocaine, is a controlled substance offense; and (3) he has two prior qualifying felonies: a 1994 conviction for possession with intent to deliver marijuana, a controlled substance offense, and a 1995 conviction for second degree murder, a crime of violence. With the career offender enhancement, Mr. Love's total offense level is 37 and his criminal history category is VI. U.S.S.G. § 4B1.1(b). His Guideline range—as amended by the First Step Act and considering any appropriate Guideline amendments—remains 360 months to life imprisonment.

## IV. Section 3553(a) factors

Now that I have adjusted Mr. Love's statutory penalties and recalculated his Guidelines range, I must reapply the § 3553(a) factors, taking into account Mr. Love's post-conviction behavior. *See Love*, 849 F. App'x at 418. Section 404(b) of the First

17

Step Act requires more than simply a "mechanical application of the Fair Sentencing Act" and expressly permits the court to "*impose* a reduced sentence," not just modify or reduce the sentence. *Chambers*, 956 F.3d at 672 (emphasis added). I therefore have the authority to reduce Mr. Love's sentence under the First Step Act even though his Guidelines range has not changed. *See id.* at 675. In determining whether to use my discretion to impose a reduced sentence, I look to the § 3553(a) sentencing factors and consider Mr. Love's post-conviction behavior. *See id.*

Section 3553(a) mandates that the sentence I impose be sufficient but not greater than necessary to:

    a) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    b) afford adequate deterrence to criminal conduct;
    c) protect the public from further crimes of the defendant; and
    d) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). I also must consider the "nature and circumstances of the offense and the history and characteristics of the defendant"; "the kinds of sentences available"; "the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines"; and "any pertinent policy statement." *Id.*

Courts have determined that the First Step Act "grants broad discretion to judges to decide whether to impose a reduced sentence" and "should be read in the broadest way possible, consistent with the remedial purpose of the . . . Act." *United*

*States v. Medina*, No. 3:05-cr-58, 2019 WL 3769598, at *6 (D. Conn. July 17, 2019). Indeed, recent cases suggest that courts are taking a more expansive, defendant-friendly view of the relief available, and the robust analysis required, under the First Step Act. *See, e.g.*, *United States v. Reed*, 7 F.4th 105, 107–08 (2d Cir. 2021) (vacating the district court's order concluding that the defendant was not eligible for relief under the First Step Act, and holding instead that a multi-object conspiracy qualifies as a "covered offense" eligible for a sentence reduction under the Act); *Collington*, 995 F.3d at 355 (setting forth a three-step process that a district court must take when considering a request for relief under the First Step Act).

Here, the Fourth Circuit concluded that a discussion of Mr. Love's post-sentencing rehabilitation in a footnote is not adequate consideration by the court. *Love*, 849 F. App'x at 418. I do not understand that conclusion. Nevertheless, in light of the development of First Step Act jurisprudence, I am persuaded to take a more generous view of the § 3553(a) factors in determining an appropriate sentence for Mr. Love.

Mr. Love's offenses are quite serious, and they demonstrate a need to both deter Mr. Love from reoffending and impose a sentence that reflects the seriousness of his offense. As reflected in the PSR, Mr. Love was paroled from prison on May 22, 2002, and within several months, he was leading a drug conspiracy that brought ounces of cocaine into West Virginia. [ECF No. 784, at 4–7]. Moreover, he has a history of violent crime—a prior conviction for second degree murder—and he

possessed a loaded gun in connection with his distribution of cocaine. *Id.* at 6, 10. As I expressed at Mr. Love's sentencing hearing, "The seriousness of drug dealing increases dramatically when firearms are involved in the offense because of the greatly increased risk of violence." [ECF No. 454, at 61: 12–15].

That being said, Mr. Love was affected by the disparate treatment of offenses involving crack and powder cocaine. The Fair Sentencing Act, which reduced mandatory minimum sentences for crack cocaine, was intended to address the 100-to-1 ratio that drastically contributed to the racialized sentencing inequalities between offenses involving powder cocaine versus crack cocaine. *Wirsing*, 943 F.3d at 177. If he were sentenced today, Mr. Love would face a mandatory minimum sentence of 10 years for his drug distribution and an additional 5 years for possessing a gun in connection with a drug felony. While his Guidelines range remains the same, I find that his designation as a career offender overstates his criminal history. The Guidelines require two prior qualifying convictions to designate a defendant as a career offender, and while one of Mr. Love's prior qualifying convictions is for second degree murder, the other is for possession with intent to distribute marijuana.

Since Mr. Love's marijuana conviction, marijuana has become legal as a recreational drug in many states and as a medical treatment in many more states. As I noted at the outset, yesterday President Biden pardoned all individuals convicted of simple marijuana possession under federal law. *See* Liptak, *supra*. This policy change reflects a trend among American citizens towards a more relaxed view of

marijuana. Here, Mr. Love's career offender enhancement has the effect of recommending a 30-year sentence simply because he once possessed a substance that has since become legal in many jurisdictions.

Given that Mr. Love's mandatory minimum sentence has decreased substantially, and that courts have adopted an expansive reading of the First Step Act, I find it appropriate to reconsider Mr. Love's sentence. While I do not find that post-sentencing behavior alone is sufficient reason to reduce a sentence, I must consider whether it would *prevent* me from reducing a sentence. That is to say, if I find sufficient reason to reconsider a defendant's sentence, an unproductive or violent prison record would prevent me from reducing that sentence. Here, I find that Mr. Love's post-sentencing behavior has been exemplary. He has used his time while incarcerated productively. He has taken educational classes, including some college classes to increase his options upon release. Additionally, he has written two books and several screenplays, and judging by his legal filings, he has learned quite a bit about the law, further demonstrating his commitment to education. I find that Mr. Love's post-sentencing conduct does not prevent me, in this case, from reducing his sentence.

I sentenced Mr. Love to 5 years more than the statutory mandatory minimum. He faced statutory mandatory minimums of 20 years imprisonment for his drug distribution conviction and 5 years imprisonment for his gun conviction. Mr. Love's Guidelines range at sentencing was 360 months to life imprisonment for his drug

distribution conviction, with an additional 60 consecutive months for his gun conviction. I sentenced Mr. Love to 300 months for his drug distribution charges, representing a 5-year downward variance. I then applied the mandatory consecutive 60-month sentence for the gun charge for a total of 360 months, or 30 years imprisonment. Now, while Mr. Love's Guidelines range remains the same, his statutory mandatory minimum has decreased by 10 years. Accordingly, after considering the tenuous nature of Mr. Love's career offender designation, the fact that the statutory penalties for his crimes have decreased by 10 years, the policy reasons behind that decrease, and that his post-sentencing conduct does not prevent me from reducing his sentence, I **FIND** that a 20-year sentence—5 years more than his revised statutory minimum—is sufficient but not greater than necessary to achieve the sentencing goals outlined in § 3553(a). Mr. Love's motion to reduce his sentence of imprisonment is **GRANTED**.

Additionally, I find that a reduction in Mr. Love's term of supervised release is warranted. I originally imposed a 10-year term of supervised release—the mandatory minimum at the time. The application of the First Step Act reduces the mandatory minimum period of supervised release to 8 years on Count Five. I sentenced Mr. Love to the minimum period of supervised release available at the time of his sentence. Because that statutory minimum period has changed, I **FIND** it justifiable and appropriate to decrease Mr. Love's sentence of supervised release from 10 years to 8 years on Count Five. This sentence of 8 years of supervised release on Count Five

shall run concurrently with Mr. Love's sentence of 5 years of supervised release on Count Six. Mr. Love's motion to reduce his sentence of supervised release is **GRANTED**.

## V. Conclusion

On reconsideration upon remand, Mr. Love's Motion for Reduction of Sentence pursuant to the First Step Act, [ECF No. 786], is **GRANTED**. Mr. Love's term of imprisonment is **modified to 20 YEARS** and his term of supervised release is **reduced to 8 YEARS** to run concurrent with his term of supervised release on Count Six.

Mr. Love's Motion to Expedite; Motion for Resentencing, or in the Alternative, Motion for Sentencing Reduction; Motion to Set for Briefing; Letter-Form Motion for Reconsideration; Motion to Resubmit Previous Filings; Motion for Discovery; Second Motion to Expedite; Motion for Appointment of Counsel; Motion to Reconsider; Motion for Sentencing Reduction; and Motion to Amend Defendant's Motion for Reduction of Sentence [ECF Nos. 774, 775, 795, 798, 809, 810, 811, 828, 829, 831, 842] are **DENIED AS MOOT**. Mr. Love's Motion to Transfer and Motion to Dismiss; Motion to Amend Pursuant to Federal Rule of Civil Procedure 59(e) and Motion to Remand for Rebriefing; Motion to Include Additional Argument; Motion to Include Additional Issue and Request for Immediate Release; and Motion for Compassionate Release [ECF Nos. 764, 772, 833, 834, 838] are **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

23

The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER:      October 7, 2022

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE